UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL R. MCCUE,

Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

CASE NO. C05-5241FDB

REPORT AND RECOMMENDATION

Noted for January 13, 2006

Plaintiff, Michael R. McCue, has brought this matter for judicial review of the denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is thirty-four years old.[1] Tr. 30. He attended high school through the ninth grade and received a general equivalency diploma. Tr. 87. He has past work experience as a dishwasher, fire fighter, garage door installer, trailer builder, lumbar yard helper, auto mechanic, log home laborer, and

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

blacksmith helper. Tr. 90.

On February 27, 2001, plaintiff filed an application for SSI benefits, alleging disability as of August 15, 1997, due to borderline and schizotypal personality disorder, memory problems and sleep problems. Tr. 76. His application was denied initially and upon reconsideration. 30, 32-33, 39. He requested a hearing, which was held before an administrative law judge ("ALJ") on June 18, 2002. Tr. 272. Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert. Tr. 272-305. On October 17, 2002, the ALJ issued a decision, finding him capable of performing a significant number of jobs existing in the national economy, and therefore determining him to be not disabled. Tr. 28-29. On July 18, 2003, plaintiff's request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 416.1481.

Plaintiff filed a complaint with this court, seeking judicial review of that decision. Tr. 309. On June 7, 2004, the undersigned issued a report and recommendation, finding the ALJ erred in determining plaintiff to be not disabled. Tr. 319-34. Specifically, the undersigned found as follows:

(1) the ALJ failed to properly consider the opinion of Irene R. Mazer, Ph.D., one of plaintiff's examining psychologists, and the opinions of Kristine S. Harrison, Ph.D., and William Lysak, Ph.D., two non-examining consulting psychologists in the record;

(2) in light of this failure to properly consider those opinions, the ALJ also erred in assessing plaintiff's residual functional capacity and in finding him capable of performing other work existing in significant numbers in the national economy; and

(3) the ALJ properly discounted plaintiff's credibility.

Id. The undersigned, therefore, recommended that the matter be remanded to the Commissioner for further administrative proceedings in accordance with the above findings. Id. The district court adopted that report and recommendation on July 2, 2004. Tr. 317-18.

In accordance with the court's remand order, the Appeals Council remanded this matter to be heard by an ALJ. Tr. Tr. 335-36. On December 16, 2004, another hearing was held before the same ALJ who had issued the prior decision. Tr. 435. Plaintiff, represented by counsel, again appeared and testified, as did a different vocational expert. Tr. 435-69. On February 1, 2005, the ALJ issued a second decision once more determining plaintiff to be not disabled, finding in relevant part as follows:

(1) plaintiff had "severe" impairments consisting of a depressive disorder, a cognitive disorder, and a mathematics disorder;

(2) none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(3) plaintiff had the residual functional capacity to perform a full range of physical activity, with certain mental functional limitations, which did not preclude him from performing his past relevant work.

Tr. 314-15. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. 20 C.F.R. § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On April 1, 2005, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed for an award of benefits for the following reasons:

(a) the ALJ erred in failing to properly consider and assess the findings and opinions of Dr. Mazer, Dr. Harrison, Dr. Lysak, and Kimberly Wheel, Ph.D., an examining psychologist;

(b) the ALJ erred in not finding plaintiff's personality disorder to be a "severe" impairment;

(c) the ALJ erred in assessing plaintiff's credibility;

(d) the ALJ erred in assessing plaintiff's residual functional capacity;

(e) the ALJ erred in finding plaintiff capable of performing his past relevant work; and

(f) the vocational expert's testimony supports a finding for an outright award of benefits.

Defendant agrees the ALJ erred in failing to address specifically the opinions of Dr. Mazer and Dr. Wheel, but argues this matter should be remanded for further administrative proceedings, because issues remain with respect to whether or not plaintiff is disabled. For the reasons set forth below, the undersigned also finds the ALJ erred in determining plaintiff to be not disabled, and recommends this matter once more be remanded to the Commissioner for an award of benefits. While plaintiff also has requested oral argument in this matter, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Failed to Properly Consider the Medical Evidence in the Record

Plaintiff argues, and defendant agrees, the ALJ failed to adequately address the opinions of both Dr. Mazer (Tr. 140-47) and Dr. Wheel, who provided an additional psychological evaluation after this matter was remanded the first time (Tr. 375-81). Defendant asserts, however, that the ALJ adequately addressed the opinions of Drs. Harrison and Lysak (Tr. 171-86), because the ALJ incorporated their findings into her assessment of plaintiff's residual functional capacity. The undersigned finds, however, that the ALJ failed to adequately address all of the above opinions.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In remanding this matter previously, the undersigned specifically noted that the ALJ had failed to adequately address the opinions of Drs. Mazer, Harrison and Lysak regarding plaintiff's mental limitations. Tr. 326-29. While the ALJ did provide a brief summary of the medical evidence in the record concerning plaintiff's mental impairments in her opinion on remand (Tr. 310-12), the ALJ's analysis of that evidence consisted solely of the following statement: "[i]n the current evaluation of this matter, I place the most weight on the test results of the neuropsychological evaluation performed by Dr. [Jimi] James and in the latest consultative examination performed by Dr. [William F.] Hiltz." Tr. 312. This statement is wholly insufficient, as it fails to provide any reason as to why the ALJ found the findings of Drs. James and Hiltz the most credible, or any basis upon which the court can determine whether the ALJ's evaluation of those findings or the other medical evidence in the record was proper.

The undersigned also disagrees with defendant that the ALJ adequately addressed the opinions of Dr. Harrison and Dr. Lysak. As noted above, defendant argues the ALJ did so by incorporating the mental

functional limitations they found in her assessment of plaintiff's residual functional capacity assessment. The ALJ found plaintiff had the residual functional capacity to perform "a full range of physical activity," but was "limited mentally to simple repetitive tasks with limited interaction with the public." Tr. 313. The ALJ further found he retained "the ability to follow simple routines," and was "able to work independently with provision for his slow reading and ability to perform only simple math." Id.

This assessment of plaintiff's residual functional capacity, however, fails to incorporate all of the mental limitations found by Drs. Harrison and Lysak. Thus, for example, on a physical residual functional capacity assessment form completed in mid-April 2001, they found plaintiff to be moderately limited in his ability to: understand, remember and carry out detailed instructions; maintain attention and concentration; perform activities within a schedule; maintain regular attendance; be punctual; complete a normal workday and workweek; perform at a consistent pace; interact appropriately with the general public; set realistic goals; and make plans independently of others. Tr. 171-72. Although the ALJ's assessment of plaintiff's residual functional capacity arguably incorporates some of these limitations, it obviously does not include the majority of them.

Defendant argues it is the explanatory statement that Dr. Harrison and Dr. Lysak included with the above limitations, however, that governs here. In that statement, Drs. Harrison and Lysak indicated that plaintiff showed "a retained capacity for simple tasks," could do "some complex tasks," and evidenced an ability to get along with co-workers, but should "avoid work with the public." Tr. 173. They further stated, however, that his "cognitive impairment" limited "his ability to rapidly process information," and that he experienced "some problem-solving limitations," and thus would "benefit from assistance with complex planning/problem solving tasks." Id. While it is arguable that the ALJ's assessment of plaintiff's residual functional capacity fully incorporates these additional limitations, the ALJ did not state in her decision that he found the limitations contained in this explanatory statement to be a more accurate description of plaintiff's mental functioning than the other moderate limitations noted above. In other words, it simply is not possible to determine how the ALJ resolved the apparent discrepancies here, or even that she found the explanatory statement to be more credible.

II. The ALJ Failed to Properly Determine Whether Plaintiff's Personality Disorder Was a "Severe" Impairment at Step Two of the Disability Evaluation Process

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

sequential evaluation process. 20 C.F.R. § 404.1520. At step two of that process, the ALJ must determine if an impairment is "severe". Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), ( c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Plaintiff argues the ALJ erred by failing to provide any explanation as to why she did not find his personality disorder to be a severe impairment. The undersigned agrees. Plaintiff has been diagnosed with a personality disorder of various types by several of the examining psychologists and psychiatrists in the record. See Tr. 141, 145, 153, 182, 376. Each of them, furthermore, found him to have significant mental functional limitations. Tr. 142, 146, 153, 171-73, 185, 377. Indeed, Dr. James, on whose opinion the ALJ placed great reliance, made such findings. Tr. 153. The undersigned notes, furthermore, that in her prior decision, the ALJ found that plaintiff had a personality disorder, and that it was a "severe" impairment. Tr. 22. However, the ALJ has provided no explanation as to why she did not find that disorder to be severe in her opinion following remand. As such, the ALJ erred.

III. The ALJ Did Not Err in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

On remand, the ALJ provided the following statements regarding plaintiff's credibility:

> [T]here are multiple references in the file to the claimant's lack of interest in working and his intent to seek taxpayer-funded benefits instead. His disability conviction casts doubt on his credibility in general as does his failure to seek real employment while working under-the-table for his father. His failure to seek treatment except when in prison further casts doubt on his credibility. I note that none of the claimant's treating physicians have prescribed antidepressants or anti-anxiety medication until two weeks prior to the hearing, when Prozac was prescribed. I further find that the claimant has shown an ability to make good decisions and he has shown an ability to follow rules when he wants to. The claimant has demonstrated an ability to relate appropriately in a classroom setting, when working in past jobs, and while incarcerated. There is no evidence of inappropriate behavior toward staff or fellow inmates.

Tr. 312-13. Plaintiff argues the ALJ failed to provide adequate reasons for discounting his credibility. As noted above, however, the undersigned found the ALJ's prior determination that plaintiff was not entirely credible to be proper. See Tr. 331-33. The undersigned thus is not inclined to re-visit this issue, other than to observe that the record now contains additional evidence casting further doubt on plaintiff's credibility, evidence that the ALJ noted in her most recent decision.

In late August 2004, for example, Dr. Wheel noted that plaintiff was "[r]eluctant to put effort out," conveyed "no sense of work ethic," was "[i]nvested in" a "disabled identity," and admitted that he did not "want to work." Tr. 377. She concluded plaintiff had a "[v]ery lackadaisical attitude," lacked a "desire to push himself," and voiced "a high degree of investment in being disabled, yet presented little that directly"

confirmed a cognitive disorder or "compelling mental illness." Tr. 378. In late November 2004, plaintiff reported that he was "not looking for work," because he was "trying to get on Social Security disability," a statement in itself that is highly indicative of a lack of credibility.[2] Tr. 396.

IV. The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

As noted above, the ALJ determined that while plaintiff had the residual functional capacity to perform "a full range of physical activity," he was "limited mentally to simple repetitive tasks with limited interaction with the public." Tr. 313. The ALJ also found plaintiff retained "the ability to follow simple routines," and was "able to work independently with provision for his slow reading and ability to perform only simple math." Id. As discussed above, however, because the ALJ erred in evaluating the medical evidence in the record, she also failed explain why the mental limitations found by Drs. Mazer, Harrison, Lysak, and Wheel were excluded from the residual functional capacity assessment. As such, the ALJ's

---

[2] Plaintiff argues the ALJ also erred in assessing his credibility by ignoring and/or overlooking a vocational rehabilitation counselor's opinion that he would "require significant accommodations and more training/supervision in the workplace." Tr. 154. As previously stated, however, the undersigned is not inclined to re-visit the issue of plaintiff's credibility, and that, in any event, additional, and even more damaging, evidence concerning his credibility is now in the record. Thus, while it may be that the opinion of the vocational rehabilitation counselor provides some support for plaintiff's allegations of work-related mental functional limitations, the undersigned does not find that the vocational rehabilitation counselor's opinin overrides the substantial evidence in the record discussed above that supports the ALJ's credibility determination in this case.

assessment of plaintiff's residual functional capacity was not free of error.[3]

V. The ALJ Erred in Finding Plaintiff Capable of Performing Her Past Relevant Work

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (because ALJ included all limitations that he found to exist, and those findings were supported by substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

At the hearing, the ALJ posed a hypothetical question to the vocational expert that was substantially similar to her assessment of plaintiff's residual functional capacity. Tr. 465-66. In response, the vocational expert testified that plaintiff could perform his past relevant work as a kitchen helper, construction worker II, and material handler. Tr. 162-63, 166. Based on the vocational expert's testimony, the ALJ determined that plaintiff was capable of returning to these jobs at step four of the disability evaluation process. Tr. 313-14. Plaintiff argues that in light of the fact that the ALJ limited him to performing simple, repetitive tasks, the ALJ erred in finding him capable of returning to those jobs. The undersigned agrees.

Each of the above three jobs identified by the vocational expert are defined by the Dictionary of Occupational Titles ("DOT") to require "Level 2" reasoning. See DOT 318.687-010, DOT 869.687-026 and 929.687-030, attached to Plaintiff's Opening Briefs as Exhibits B, C and D respectively. The DOT defines Level 1 and 2 reasoning as follows:

> LEVEL 2
>
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from

---

[3]Plaintiff also argues the ALJ failed to consider his eczema affecting his hands and feet and his reactive airway disease, both of which are noted in the record. However, as with the ALJ's determination regarding plaintiff's credibility, this issue was previously dealt with in the undersigned's prior report and recommendation. There, the undersigned found plaintiff's argument on this issue to be without merit as well, because while the record did indicate that he may have been diagnosed with these conditions, there was no evidence that they affected his ability to function in a work-related or other setting in any way. See Tr. 218, 223, 226, 228, 235, 238, 243, 245, 247, 257, 263, 268.

standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DOT, Appendix C. The undersigned finds Level 1 reasoning, as defined above, to be more analogous to the ability to perform simple, repetitive tasks than Level 2 reasoning, which would preclude plaintiff from being able to perform any of the above three jobs as defined by the DOT.

The vocational expert's testimony, therefore, appears to conflict with the information contained in the DOT. The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the Dictionary of Occupational Titles ("DOT"). Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. Here, however, it does not appear the ALJ resolved this conflict before relying on the testimony of the vocational expert. To that extent, the ALJ erred.

Defendant argues that there is no conflict here, because the DOT defines each of the above three jobs to require a specific vocational preparation ("SVP") of 2, which, according to SSR 00-4p, corresponds to unskilled work. SSR 00-4p, 2000 WL 1898704 *3. The Social Security Regulations define unskilled work as follows:

Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we considered unskilled jobs if the primary work duties are handling, feeding and off bearing (that is, placing or removing material from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.

See 20 C.F.R. § 416.968. Defendant's argument is unpersuasive. First, in defining the terms separately, the DOT clearly distinguishes between a job's SVP level and the level of reasoning required to perform that job. See DICOT, Appendix C. Indeed, a plain reading of the DOT's definitions of these terms indicate that they refer to two very distinct categories. Second, the above definition of unskilled work does not necessarily exclude the requirement that an individual be capable of following more detailed or complex instructions,

although the duties themselves may be "simple" or capable of being learned in a short period of time, and it makes no mention of the term "repetitive."

Defendant further argues that plaintiff's focus on reasoning level here is misplaced, because he has earned a general equivalency diploma, and the evidence in the record does not show that his educational development changed at any time prior to the date the ALJ issued her decision. Defendant ignores the fact, however, that the ALJ herself limited plaintiff to performing only simple, repetitive tasks. Thus, even if the undersigned were to accept defendant's argument here, which the undersigned does not, defendant is bound by the ALJ's own finding on this issue. Because no reasonable explanation was provided regarding the discrepancy noted above, the ALJ was not entitled to rely on the vocational expert's testimony to find plaintiff capable of returning to his past relevant work.

VI. The Record in This Case Does Not Warrant Remand for an Award of Benefits

The remaining question then is to determine the appropriate remedy for the ALJ's errors, that is, to remand this matter for further administrative proceedings or for an outright award of benefits. Defendant argues that because issues remain regarding plaintiff's alleged disability, this matter should be remanded to the Commissioner for further administrative proceedings. Plaintiff, on the other hand, argues that there are no remaining issues to be resolved, and the record establishes that he is disabled. Accordingly, he asserts this matter should be remanded for an award of benefits. For the reasons set forth below, the undersigned finds remand for further administrative proceedings to be the appropriate remedy here.

The court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a

> determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Plaintiff argues that the record in this case is complete, and that no useful purpose would be served by sending it back to the Commissioner for additional administrative proceedings. Specifically, plaintiff asserts that because the ALJ failed to provide adequate reasons for rejecting the opinions of Dr. Mazer and Dr. Wheel, the court should credit those opinions as true. Doing so, plaintiff argues, supports an award of benefits at step five of the disability evaluation process. The undersigned disagrees.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116.

Here, the medical evidence in the record as a whole does not clearly establish that plaintiff has the mental functional limitations found by Drs. Mazer, Harrison and Lysak. As noted in the undersigned's previous report and recommendation (Tr. 328-29), the record contains evidence that both contradicts (Tr. 121-23, 125-29, 156, 158-60, 162-63, 165-67, 169, 198) and supports (Tr. 153) their findings. In addition, while Dr. Wheel found plaintiff to be moderately to markedly limited in several mental functional areas subsequent to remand as well (Tr. 377), as noted above, she had serious questions regarding his credibility and desire to work, stating specifically that he "presented little that directly" confirmed the presence of a cognitive disorder or "compelling mental illness" (Tr. 377-78). Similarly, Dr. Hiltz, who provided an even more recent evaluation of plaintiff, also noted a lack of motivation on his part, and found his mental status examination to be fairly unremarkable. Tr. 396. In addition, it does not appear the vocational expert was asked about the specific limitations found by Drs. Mazer, Harrison, Lysak and Wheel.

Accordingly, although it is disturbing that the ALJ in this case appears to essentially have ignored the court's previous order to re-consider the medical evidence in the record, the undersigned simply cannot

say that such evidence clearly shows plaintiff is disabled. Defendant states that when a case is remanded a second time, it normally is assigned to a new ALJ. In light of the failure of the ALJ here to again provide a proper analysis of the medical evidence in this case, the undersigned recommends that the court direct the Commissioner to assign this case to a different ALJ on remand.

On remand, the new ALJ shall re-consider the medical evidence in the record regarding plaintiff's mental impairments, re-determine whether plaintiff is capable of returning to any of his past relevant work at step four of the disability evaluation process, and, if not, determine whether he can perform other work existing in significant numbers in the national economy at step five. Defendant further asserts there are issues in this case concerning plaintiff's substance abuse. While the undersigned is not recommending this case be remanded on that basis, it does appear such abuse continued to be a problem at least through late 2003. Tr. 376, 378, 395-96. Accordingly, on remand, the new ALJ also shall consider whether such abuse has been a material factor in plaintiff's alleged disability.[4]

CONCLUSION

Based on the foregoing discussion, the court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 13, 2006**, as noted in the caption.

DATED this 19th day of December, 2005.

Karen L. Strombom
United States Magistrate Judge

[4]A claimant may not be found disabled if alcoholism or drug addiction would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).